**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARY BENNETT,

                Plaintiff,

vs.                                             Case No. 3:08-cv-646-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Mary Bennett ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits. Her alleged inability to work is based on physical impairments involving her hip and lower back. See Transcript of Administrative Proceedings ("Tr.") at 82; Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 10; "Pl.'s Mem.") at 4-9. On July 23, 2002, Plaintiff applied for disability insurance benefits, alleging an onset date of July 12, 2002. Tr. at 55-57. After holding a hearing on October 20, 2005, the Administrative Law Judge ("ALJ") issued a decision on November 22, 2006, finding Plaintiff was not disabled through the date of the decision. Tr. at 17-24. On March 12, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 7-9. On June 25, 2008, Plaintiff commenced this action under 42

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 6), and the Order of Reference was entered on September 5, 2008 (Doc. No. 7).

U.S.C. § 405(g) by timely filing the Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence of C.V. Lazo, M.D. ("Dr. Lazo"), an examining physician. Although framed as one issue, Plaintiff actually raises three: whether the ALJ articulated sufficient reasons supported by substantial evidence for discounting Dr. Lazo's opinion; whether, after discounting Dr. Lazo's opinion, there was sufficient evidence on which the ALJ could base a decision; and whether the ALJ evaluated Plaintiff's complaints of pain in the proper manner. After thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ's decision is supported by substantial evidence. The ALJ articulated adequate reasons supported by substantial evidence for discounting Dr. Lazo's testimony; there was sufficient evidence for the ALJ to render a decision without Dr. Lazo's opinion; and, the ALJ evaluated Plaintiff's complaints of pain properly. Therefore, the Commissioner's final decision is due to be affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d

1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since June 1, 2005 (the alleged onset date). Tr. at 19. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc disease of the lumbar spine with facet disease and radiculopathy; she is status post aorta bilateral femoral bypass graft repair and repair of ventral hernia; is status post ventral hernia repair and complex repair of the abdomen[;] she is status post recurrent hernia with lysis of adhesions and repair of recurrent incisional hernia with mesh." Tr. at 19. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 20. The ALJ determined Plaintiff has the residual functional capacity ("RFC") for a limited range of light work: Plaintiff can carry up to ten pounds frequently, sit for no more than six hours in an eight-hour workday, and walk and stand for up to six hours in an eight-hour workday. Tr. at 23. At step four, the ALJ observed that Plaintiff is capable of performing her past relevant work as a "Cashier/Checker" and as a waitress. Tr. at 23. The ALJ concluded Plaintiff was not under a disability[2] from July 12, 2002 (the alleged onset date) through the date of the decision. Tr. at 23.

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Dr. Lazo's Medical Opinion

Plaintiff contends the ALJ gave insufficient weight to the medical opinion of Dr. Lazo, an examining physician. Pl.'s Mem. at 10-12, 14-18. Examining physicians' opinions are not

-4-

entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160. Nevertheless, an ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). The same criteria are used in evaluating medical opinions from treating and nontreating sources.[3] The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)).

After thoroughly reviewing the medical evidence, the ALJ applied the pertinent factors in determining that Dr. Lazo's opinion was entitled to "minimal evidentiary weight." Tr. at 23. With respect to the length of the treatment relationship and the frequency of examination, the ALJ noted that Dr. Lazo saw Plaintiff on one occasion: August 15, 2005. On that date, Dr. Lazo diagnosed Plaintiff with "[d]egenerative joint disease, degenerative disc disease of lumbar with pain radiated to right lower extremity, suggesting radiculopathy," and "arteriosclerotic vascular disease peripheral vascular disease and S/P right aortiliac stenting

---

[3] "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902.

-5-

with residual discomfort in right groin area."[4] Tr. at 565. Although Plaintiff argues that the ALJ "fail[ed] to recognize" this diagnosis, Pl.'s Mem. at 15, the ALJ explicitly stated that Dr. Lazo diagnosed Plaintiff "with degenerative joint disease and degenerative disc disease of the lumbar spine, arteriosclerotic vascular disease and peripheral vascular disease." Tr. at 22. Thus, the ALJ took Dr. Lazo's diagnosis into account.

In a Physical Residual Functional Capacity Questionnaire, also completed on August 15, 2005, Dr. Lazo found that pain in Plaintiff's lower back affected her ambulation and standing, especially in prolonged durations. Tr. at 566. Dr. Lazo found "mild" degenerative changes and arthritis with "mild" hepotomegaly. Tr. at 566. Dr. Lazo noted that Plaintiff "did not admit to any side effects of medications," which gave her "sporadic" relief. Tr. at 567. Dr. Lazo opined as follows: Plaintiff "often" had pain that interfered with her concentration; Plaintiff could walk one-half block without rest; Plaintiff would need five-minute periods of walking every ninety minutes in an eight-hour workday; Plaintiff would need to be able to shift positions at will; Plaintiff would need to take unscheduled breaks to rest for several minutes; and Plaintiff was "not capable of being in [a] work situation." Tr. at 567-69. According to Dr. Lazo, Plaintiff could continuously sit for thirty minutes at a time, could continuously stand for fifteen minutes at a time, could sit for a total of less than two hours in an eight-hour workday, and could stand for a total of less than two hours in an eight-hour workday. Tr. at 568. Dr. Lazo found Plaintiff could frequently lift ten pounds, occasionally lift twenty pounds, and never lift fifty pounds. Tr. at 569.

---

[4] Plaintiff suffered from serious problems with her abdominal region as a result of a staph infection that she developed after undergoing a surgical procedure in December 2003. Tr. at 366-68, 345, 350-52, 390, 417-20, 455-58, 471-552. Dr. Lazo did not refer to those medical problems in reaching his opinion, and Plaintiff does not argue they should have resulted in a finding of disability. Tr. at 562-70; see Pl.'s Mem. at 10-18.

Contrary to Plaintiff's contentions, the ALJ did not "arbitrarily reject" Dr. Lazo's medical opinion. Pl.'s Mem. at 14. In fact, the ALJ clearly articulated his reasons for discounting Dr. Lazo's medical opinion: the opinion was discounted because it rested primarily on Plaintiff's subjective complaints and was not supported by the totality of the objective evidence in the hearing record. Tr. at 22-23. These are appropriate reasons for discounting a physician's opinion. See Crawford, 363 F.3d at 1159 (finding that the opinion of a treating physician was properly rejected when it was inconsistent with his own treatment notes and based primarily on the plaintiff's subjective complaints of pain); Phillips, 357 F.3d at 1240-41 (stating that a treating physician's opinion can be discounted when it is not bolstered by the evidence or the evidence supports a contrary finding).

A thorough review of the record reveals substantial evidence supporting the ALJ's reasons for discounting Dr. Lazo's medical opinion. The history of Plaintiff's hip and back pain goes back to 1994. Tr. at 239. However, a July 1, 1994 MRI of Plaintiff's left hip was unremarkable. Tr. at 239. A bone scan in 1996 was also unremarkable. Tr. at 138-41, 238. Beginning in 2000, Plaintiff regularly complained of hip and lower back pain to her primary care physician, Charles Day, M.D. ("Dr. Day"). Tr. at 152-89, 263-89, 314-44. Dr. Day referred Plaintiff to Hugh E. Switzer, M.D. ("Dr. Switzer") for treatment. Tr. at 163. After examining Plaintiff, Dr. Switzer recommended pain management. Tr. at 142. In 2002, Edward M. Lee, M.D. ("Dr. Lee") began treating Plaintiff for pain, and Plaintiff was prescribed pain medication. Tr. at 206-39. On May 14, 2002, Dr. Lee reported that Plaintiff was "virtually pain-free." Tr. at 214. On July 16, 2002, Dr. Lee observed Plaintiff "appears to be suffering considerably"; however, he also noted "symptom exaggeration." Tr. at 219

(emphasis added). It was noted that a previous injection had relieved Plaintiff's pain, but the pain returned. Tr. at 219. On August 13, 2002, Dr. Lee observed that Plaintiff was doing "much better" after a previous injection. Tr. at 206. Although Dr. Lee doubted Plaintiff would be able to return to her old job, Dr. Lee did not state that she would be completely unable to work. Tr. at 206.

The ALJ indicated that Dr. Lazo's opinion was inconsistent with the findings of Dr. Switzer, who saw Plaintiff for hip and back pain. Tr. at 142, 236-40. Dr. Switzer stated in January 2002 treatment notes that an X-ray showed "some" degenerative changes in Plaintiff's lower back. Tr. at 142. In February 2002, an MRI showed "some" or "mild" disk degeneration at L4-5 and "some mild degree" of foraminal encroachment. Tr. at 142, 218. Plaintiff's lumbar disc levels were normal. Tr. at 218. Dr. Switzer believed Plaintiff was having nerve pain that could be markedly improved with pain management. Tr. at 142. On September 3, 2002, Dr. Switzer indicated that Plaintiff did not need an assistive device for ambulation, that Plaintiff had "no loss of motion," no muscle spasm, normal grip strength, normal gait and station, and that Plaintiff could squat and walk on her heels and toes. Tr. at 240. These findings are inconsistent with Dr. Lazo's opinion and do not support a finding of disability.

On September 4, 2003, during a neurosurgical evaluation, Mark A. Spatola, M.D. ("Dr. Spatola") noted that Plaintiff's gait and station were normal, her motor strength in her arms and legs was normal, and there were no atrophy or abnormal movements. Tr. at 261. Dr. Spatola found "no indication for surgical intervention." Tr. at 262. Moreover, the lumbar

spine X-Ray on which Dr. Lazo's opinion is based reflected only "minor changes of degenerative arthritis . . . ." Tr. at 561.

Dr. Lazo's opinion is also inconsistent with Plaintiff's own testimony during the hearing before the ALJ. Dr. Lazo opined that Plaintiff could sit a total of less than two hours in an eight-hour workday and could stand a total of less than two hours in an eight-hour workday. Tr. at 568. Plaintiff, in contrast, testified at the hearing that she could stand and walk a total of approximately three hours in an eight-hour workday, and she could sit a total of approximately three to four hours in an eight-hour workday, although she was somewhat equivocal in this regard. Tr. at 649-50.

Having reviewed Plaintiff's treatment notes and the other evidence of record, the ALJ found Dr. Lazo's opinion to be "unsupported by the totality of the objective evidence in the hearing record." Tr. at 22-23. The ALJ indicated inconsistencies between Dr. Lazo's opinion and the other record evidence. Rather than "playing doctor" and substituting his own opinion for the expertise of Dr. Lazo, see Pl.'s Mem. at 15, the ALJ simply weighed the available evidence to determine Plaintiff's RFC as the regulations and case law require him to do. See 20 C.F.R. § 404.1546; see also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that courts should be concerned with "the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of [the claimant's] condition"). As Plaintiff correctly states, "it is the role of the ALJ to make the RFC determination." Pl.'s Mem. at 11; see also SSR 96-5p, 1996 WL 374183. The ALJ considered all of the evidence, and in the process of weighing that evidence determined that Dr. Lazo's opinion with respect to Plaintiff's RFC was unsupported.

Cf. Green v. Soc. Sec. Admin, 223 F. App'x 915, 923-24 (11th Cir. 2007) (unpublished) (observing that the ALJ was not substituting his judgment for that of a physician when he determined that the physician's opinion was inconsistent with the objective medical evidence in the record).

Plaintiff argues that "maybe most notably, the ALJ, when determining the 'severe impairments' that [she] experienced at Step Two of the sequential evaluation process, did not find that her back impairment was 'mild' but instead adopted the diagnoses of Dr. Lazo set forth above." Pl.'s Mem. at 16 (citing Tr. at 19). The regulations define "severe impairment" in the negative: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); see also 20 C.F.R. § 404.1520(c). By using the word "severe" at step two to describe Plaintiff's impairments, the ALJ simply determined that Plaintiff's impairments significantly limited her physical ability to do basic work activities. It would be mere speculation to assume that the definition of the term "severe" in the Social Security Regulations is equivalent to Dr. Lazo's use of that term in the context of a medical evaluation. See Hall v. Harris, 658 F.2d 260, 265-66 (4th Cir. 1981) (explaining there was nothing to suggest a doctor's use of the term "light work" was equivalent to the definition of that term in the Regulations). Moreover, a "mild" medical condition could be a "severe impairment" and still not be disabling. See 20 C.F.R. § 404.1520. Thus, it was not inconsistent for the ALJ to observe that Plaintiff's medical records indicated she had "mild" degenerative disc disease and a "mild" degree of foraminal encroachment, Tr. at 21, yet find she had a "severe impairment" at step two of the sequential inquiry Tr. at 19.

After a thorough review of the entire record, the undersigned finds that the ALJ articulated sufficient reasons for discounting the opinion of Dr. Lazo. In addition, the reasons articulated by the ALJ are supported by substantial evidence.

### B. Sufficiency of Record Without Dr. Lazo's Opinion

Plaintiff argues that without Dr. Lazo's opinion there was not a sufficient evidentiary basis for the ALJ to render a decision, and that remand to obtain the opinion of a treating physician is required. See Pl.'s Mem. at 12-14. That is, Plaintiff argues that without the opinion of Dr. Lazo, there was no evidence on which the ALJ could base a decision. See id.

Dr. Lazo's medical opinion takes up ten pages in a 685-page record. Tr. at 561-70. Among other documentation, the rest of the record consists of treatment notes, objective medical findings, and evaluations, many of which are more reliable than the opinion of an examining physician who saw Plaintiff on only one occasion.

The burden is on the claimant to prove disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); Phillips, 357 F.3d at 1241 n.10 (noting that the burden shifts to the Commissioner at the fifth step of the sequential evaluation process). Plaintiff was represented by counsel during the proceedings before the ALJ and had ample opportunity to submit medical opinions from any of her treating physicians. Cf. Osborn v. Barnhart, 194 F. App'x 654, 668-69 (11th Cir. 2006) (unpublished) (observing that the burden was on the claimant to establish disability and stating that there was no need for additional information or clarification because the ALJ's decision was supported by substantial evidence). There was ample evidence for the ALJ to make a decision. As substantial evidence supported the

ALJ's decision, there was no need to obtain additional evidence. See id.; see also Green, 223 F. App'x at 923-24.

### C. Plaintiff's Complaints of Pain

The ALJ determined that Plaintiff was not experiencing disabling pain. "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223; Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

When considering a claimant's testimony as to pain or other subjective symptoms, the relevant factors include the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and

aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Davis v. Astrue, 287 F.App'x 748, 760 (11th Cir. 2008) (unpublished). All available evidence is considered in determining the extent to which a claimant's pain or other symptoms affect his or her ability to perform basic work activities, and the claimant's statements concerning the intensity, persistence, and limiting effects of the pain or other symptoms are evaluated in relation to the objective medical evidence and all other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." Tr. at 21. However, after considering the relevant factors in light of the record evidence, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her pain were "not entirely credible." Tr. at 21. The ALJ articulated explicit and adequate reasons for discrediting Plaintiff's pain testimony. The ALJ observed that Plaintiff's condition had improved with conservative treatment and nerve root injections, and that Plaintiff's condition has "continued to stabilize." Tr. at 21. This finding is supported by the treatment notes and other evidence, which suggest that the relatively conservative treatment regimen of medication and injections was keeping Plaintiff's pain under control. Tr. at 142, 206, 219, 236-40, 261. The ALJ explained Plaintiff testified that during a typical day she "tr[ies]" to clean, does some "some" cooking, does the dishes with help, and goes grocery shopping. Tr. at 648-49. As noted supra at 8-9, Plaintiff testified that she could stand and walk a total

of approximately three hours in an eight-hour workday, and she could sit a total of approximately three to four hours in an eight-hour workday. Tr. at 649-50. The ALJ further observed that Plaintiff was able to take care of her personal needs and go to church. Tr. at 21. Plaintiff's activities of daily living are not so limited as to indicate disability.

In addition, the ALJ considered Plaintiff's testimony in light of the objective medical evidence, including the February 1, 2002 MRI that showed only mild degenerative disc disease with a mild degree of foraminal encroachment. Tr. at 21, 142, 218, 561. The ALJ observed that an evaluation on September 4, 2003 revealed "no objective evidence of neurologic dysfunction." Tr. at 22, 262. Furthermore, the ALJ noted that Dr Switzer reported Plaintiff had no loss of motion, no paravertebral muscle spasm, and no loss of motion of the spine; she had normal grip strength and normal gait and station. Tr. at 22, 240. The ALJ's conclusion that Plaintiff's back pain was not disabling is supported by substantial evidence.

## V. Conclusion

The ALJ articulated adequate reasons for discounting Dr. Lazo's medical opinion, and those reasons are supported by substantial evidence. The ALJ did not "play doctor"; rather, the ALJ fulfilled his duty to determine Plaintiff's RFC. In addition, there was sufficient evidence in the record for the ALJ to render a decision without Dr. Lazo's opinion. Furthermore, the ALJ gave Plaintiff's pain testimony proper consideration. After thoroughly reviewing all of the evidence of record, the undersigned finds that the ALJ's decision is supported by substantial evidence.

In accordance with the foregoing, it is

**ORDERED:**

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

2.     The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 2, 2009.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jdf
Copies to:
Counsel of Record